WICHITA CITY LINES, INCORPORATED V. RAY PUCKETT

No. A-5826. Decided November 14, 1956.
Rehearing overruled December 19, 1956.
(295 S.W. 2d Series 894)

*Lloyd A. Boas*, of St. Louis, Mo., *Jones, Parrish & Fillmore, McDonald & Anderson*, all of Wichita Falls, *Looney, Clark & Moorehead, Everett L. Looney* and *R. Dean Moorhead*, all of Austin, for petitioner.

The Court of Civil Appeals erred in holding that there is any evidence to support the jury finding that negligence on the part of bus company was the proximate cause of the fire which destroyed the building. Also in holding that the insurance carried by the landlord was for his sole protection and benefit and was not for the mutual protection of both the landlord and the bus company. Waterman Lbr. Co. v. Beaty, 110 Texas 227, 218 S.W. 363; Bowles v. Bourdon, 148 Texas 1, 219 S.W. 2d 779; Publix Theatres Corp. v. Powell, 123 Texas 304, 44 S.W. 2d 1053.

*Bullington, Humphrey, Humphrey* and *Fillmore*, of Wichita Falls, and *William A. Rembert, Jr.*, of Dallas, for respondent.

On question of lessor carrying his own insurance of building as excusing lessee from liability to lessor for fire loss caused by its own negligence, General Mills v. Goldman, 184 Fed. 2d

359; Continental Trailways v. Bowen Estate, 152 Texas 260, 256 S.W. 2d 71; Cerny Pickas Co. v. C. R. Jahn Co., 347 Ill. App., 379, 106 N.E. 2d 828.

MR. JUSTICE MCCALL delivered the opinion of the Court.

Ray Puckett, respondent herein, owned a building in Wichita Falls, Texas. The building fronted 50 feet on Scott Street and extended 150 to the alley. Puckett leased the building for $400.00 per month to a bus company, Wichita City Lines, Inc., petitioner herein, as a "place to load and unload passengers and as a shelter for passengers and for any other lawful business." Puckett reserved from the lease a partitioned area of 24 by 52 feet in the front of the building which he used as an office.

Puckett carried fire insurance on the building with two companies, Millers Mutual Fire Insurance Company of Texas and Firemen's Insurance Company. On March 17, 1952, the building was practically destroyed by fire. The insurance companies paid Puckett a total of $34,629.40 in insurance benefits under the policies, and thereby became subrogated to any cause of action which Puckett had against any third person who caused the fire. The insurance companies in Puckett's name sued the lessor bus company alleging that the latter had negligently caused the fire which destroyed the building. They obtained judgment in the trial court against the bus company for the amount of $34,629.40 paid to Puckett, and this judgment has been affirmed by the Court of Civil Appeals. 288 S.W. 2d 122. The application for writ of error by the bus company was granted by this Court.

It is urged by the bus company that there is no evidence to support the jury findings that negligence on the part of the bus company was a proximate cause of the fire whcih destroyed the building. The jury found that the bus company was negligent, through its employee Albert T. Ferguson, in transferring gasoline from a tank truck into an underground storage tank without keeping a proper watch over the operation, that the bus company was negligent in using a filler pipe located inside the building to fill the underground tank, and that the bus company was negligent in having and keeping more than 250 gallons of gasoline in the building upon the occasion in question. Each of the above acts or omissions was found by the jury to be a proximate cause of the damage to the building. Puckett also relied upon the theory of res ipsa loquitur and the jury on these issues found the bus company guilty of negligence which was a proximate cause of the damage to the building.

Viewed in the light most favorable to the jury findings the evidence presents the following story. When the bus company leased the building in 1951 there was an underground gasoline storage tank of 280 gallon capacity located under the building. At the time of the lease and at the time of the fire the filler pipe for the tank was located inside the building near the rear thereof. Under an ordinance of the City of Wichita Falls filler pipes for gasoline storage must be located outside of buildings. It is undisputed that the above ordinance was violated.

There was another ordinance which made it unlawful for any person "to have or keep, at any one time, in a room or contiguous rooms, more than 250 gallons of gasoline." Since on weekends the bus company required more than 280 gallons of gasoline held by the underground tank, an arrangement had been made with the Texas Company whereby each Saturday afternoon it would leave in the building a full gasoline tank truck with a capacity of 730 gallons. When the underground tank was pumped dry during a weekend, a hose would be attached to the tank truck and the other end of the hose would be inserted in the filler pipe of the underground tank, which would be refilled by the gasoline flowing by gravity from the tank truck. The filler pipe was located about four or five feet from the alley wall of the building and the tank truck was parked a few feet from the filler pipe. The filler pipe was a three or four inch pipe which extended about three inches above the floor. The hose from the gasoline tank truck fitted into it very loosely and extended into the filler pipe five or six inches.

The fire occurred at about 1:30 a.m. on a Monday morning. At that time Albert T. Ferguson, a bus company employee, was the only person in the building. He had been filling the buses stored in the building with gasoline from the underground tank. There were six buses and their tanks held about 80 gallons each. The underground tank had been emptied, and he was filling it from the Texas Company tank truck. The tank truck had three compartments with capacities of 160, 240, and 330 gallons. He had already emptied the 160 compartment into the underground tank, and was in the process of letting the gasoline run from the 240 compartment. The gasoline flowed at a rate of 12 to 16 gallons per minute. After Ferguson watched the flow of gasoline for four or five minutes he turned away to take the reading on the fare box of one of the buses. At this point a soldier entered the open back door of the building and made an inquiry of Ferguson whether the last bus had departed. Upon being advised that it had the soldier turned toward the

rear door and Ferguson prepared to enter the bus. As he got into the bus, he heard a sound "just like a wind" and looked around to see a solid wall of flame engulfing the back of the building and coming rapidly toward him. He ran for the front of the building with the fire pursuing him "right down on the floor." The floor of the building was concrete and had been swept clean prior to the fire. The wall of flame "right down on the floor" moved across this clean concrete floor as it chased Ferguson the length of the building. The fire was "pretty close" behind him as he went out the front door. He ran across the street and summoned the fire department. When he returned the entire building was aflame. The testimony of the assistant fire chief who arrived a few minutes thereafter was to the effect that the intensity of the fire and the intermittent explosions indicated a gasoline fed fire.

The bus company contends that there is no evidence showing how the fire started. It is suggested that the soldier who briefly talked with Ferguson may have thrown down a lighted match or cigarette or that a nail in his shoe may have struck a spark from the concrete floor. It was also suggested that oily rags in a small tool room may have ignited spontaneously or that a spark may have been generated by static electricity or come from defective wiring. Other suggestions were made but there was no proof of the origin of the igniting spark or flame. However, in our view of this case the origin of the igniting spark or flame is immaterial.

The bus company was guilty of negligence in violating the city ordinance forbidding the use of a filler pipe inside the building. The purpose of this ordinance was to avoid the danger of fire arising from fumes escaping from the filler pipe as gasoline is put into the underground storage tank. The fire marshal testified that when such fumes escape inside a building they settle near the floor because gasoline fumes are heavier than air, "and the first spark or fire that touches them, why you have got an explosion."

■ The ordinance was violated. The danger to be avoided occurred. The gasoline fumes were ignited. We believe the jury under the circumstances was justified in finding that it was the gasoline fumes which caught fire and produced the wall of fire low on the floor which pursued Ferguson across the bare concrete. The jury undoubtedly agreed with Puckett that the concrete was not igniting to produce this explosive, fast moving wall of flame. The jury could logically and reasonably infer

from the above evidence that the gasoline fumes escaping from the filler pipe were ignited, and thus the negligence of the bus company in using an inside filler pipe was a proximate cause of the damage to the building. It was the right of the jury to reject the suggestions of the bus company that natural gas from a leak in a nearby building may have permeated the air in the Puckett building and accounted for the explosive nature of the fire, or that the same might have been due to a barrel of lubricating oil in the small tool room. The jury undoubtedly believed that neither suggestion explained the fire which originated in the back in a sudden explosion and rolled low on the floor across the building.

■ We believe that the evidence supports the other findings of the jury as to negligence and proximate cause but there is no necessity for discussion of these other findings. Through the negligence of the bus company gasoline fumes were allowed to escape into the building where they settled near the floor and created a highly dangerous situation. The bus company is not relieved of the consequences of this negligence because the spark that ignited the fumes was of unknown origin. It could have foreseen that the highly inflammable fumes were likely to be ignited, and the fact that a soldier deliberately or negligently ignited them by dropping a lighted match or cigarette, or that a spark or flame of unknown origin ignited the fumes, does not break the chain of causation. Robert R. Walker, Inc. v. Burgdorf, 150 Texas 603, 244 S.W. 2d 506; Texas Company v. Gibson, 88 S.W. 2d 757, reversed on another point, 131 Texas 598, 116 S.W. 2d 686; Fort Worth Gas Company v. Cooper, 241 S.W. 282 (er. dism.).

Petitioner bus company relies upon Exporters' & Traders' Compress & Warehouse Co. v. Schulze, Com. App., 265 S.W. 133; National Hotel Co. v. Motley, 123 S.W. 2d 461 (er. dism.) ; Texas Hotel Co. of Longview v. Crosby, 131 S.W. 2d 261 (dism. judg. cor.), and other decisions holding that the mere occurrence of a fire does not give rise to a presumption of negligence. These cases are not applicable in this case. The negligence shown here consisted in the violation of a city ordinance which exposed highly inflammable gasoline vapors to ignition by any chance spark or flame and thereby greatly increased the danger of destruction of the building by fire. The failure of Ferguson to properly watch the transfer of gasoline to the underground tank operated in the same manner. The storage of gasoline in excess of the legal limit had the same effect. The submission of the res ipsa loquitur issues to the jury similarly referred

not to the origin or mere occurrence of the fire but to the exposure of gasoline fumes in the operation of equipment under the sole and exclusive control of the bus company.

■ In its pleadings in the trial court the bus company alleged that Puckett was guilty of contributory negligence in installing the underground storage tank without a permit, in installing the inside filler pipe therefor in violation of the city ordinance, and in installing a vent pipe which did not conform to the ordinance. The trial court refused to submit issues to the jury on these allegations. Petitioner contends that if it is guilty of negligence because of these violations, Puckett is also guilty because he first committed the violations and then leased the building with the unlawful equipment to petitioner. Perhaps Puckett was originally negligent as alleged but as a matter of law any such negligence on his part was not a proximate cause of the damage to the building.

The lease from Puckett to the Bus Company provided:

"6.  All alterations, additions and improvements, and permission is hereby expressly granted by lessor to make such as are necessary, shall be put in at the expense of lessee * * *.

"7.  Lessee shall promptly execute and fulfill all of the ordinances of the City of Wichita Falls, Texas, applicable to said premises, and all orders and requirements imposed by the Board of Health, Sanitary and Police Departments for the correction, prevention and abatement of nuisances in or upon or connected with said premises during said term at lessee's expense.

"12.  Lessee shall have the right to use the gasoline storage and pumping equipment now located in the building and may at its own expense improve or enlarge same.

"15.  * * * the lessee accepts said premises as suitable for the purposes for which same are leased and accepts the building and each and every appurtenance thereof and waives defects therein and agrees to hold the lessor harmless from all claims for any such damage * * *."

Under these terms Puckett delivered exclusive possession of the portion of the building containing the storage tank, filler pipe, and vent. He had thereafter no right to enter and correct the unlawful condition. He had the right to presume that in

accordance with the provisions of the lease agreement the bus company would promptly correct such conditions to conform to the city ordinances before using this equipment. The evidence further shows that five weeks before the fire the city fire marshal and the city building inspector made an inspection of the building and pointed out these violations of the ordinances to the bus company maintenance superintendent, who thereupon promised to correct the violations. However, nothing was done prior to the fire.

Under the above circumstances as a matter of law the original violations by Puckett cannot be a proximate cause of the damage to the building. He cannot be held to the duty of foreseeing that the bus company would, from the beginning of the lease term on January 1, 1952, until the fire on March 17, 1952, use the storage tank contrary to the terms of the lease, in violation of the city ordinances, and in spite of the warning of the fire marshal and building inspector. The act of Puckett in leasing the building with the unlawful equipment is too remote to constitute a proximate cause of the damage to the building. This case presents a typical application of Bacon's ancient maxim "In jure non remota causa sed proxima spectatur." The trial court properly refused to submit the requested special issues. Phoenix Refining Co. v. Tips, 125 Texas 69, 81 S.W. 2d 60; Nagorny v. Gray, 261 S.W. 2d 741 (no writ).

■ Petitioner also contends that the insurance procured by Puckett was for the benefit and protection of the bus company as well as Puckett, and therefore the insurance companies had no subrogated cause of action against one protected under the policy. This contention is based upon the following provision in the lease:

"Lessor agrees to carry his own insurance against loss by fire, etc., on the entire building."

Petitioner contends that the lessor had this right as a matter of law and therefore there was no purpose in putting this provision in the written lease unless it was to manifest an agreement that the lessor was to procure and pay for insurance to protect not only the lessor's interest in the building but that of the lessee. It will be noted that often such matters implied in law are included in written agreements to reduce the opportunity for misunderstanding and to integrate the entire agreement into one written memorial. The need to spell out such matters was particularly great in this case where the lessor

retained possession of part of the building. For example, the lease also provided that the lessee should take good care of the leased property and fixtures, which is the duty of the lessee under the law anyway.

The provision by its terms imposed no obligation on the lessor to take out any insurance to protect himself or the lessee. No amount of insurance is stipulated nor does one find any of the specific terms to be expected if the provision was designed to protect the lessee. Furthermore, the lease provided that in the event of fire that should the lessor deem the building unfit of occupancy, he could decide not to repair but to remodel or rebuild and terminate the lease. This seems inconsistent with any intention in the insurance provision to protect the interest of the lessee.

Petitioner relies upon the case of Publix Theatres Corporation v. Powell, 123 Texas 304, 71 S.W. 2d 237. In that case the lessee agreed in the lease to carry the fire insurance on the leased building in the amount of at least $20,000.00 in some solvent insurance company with loss payable to the lessor. The lessee procured and paid for the insurance as stipulated. The building burned and the lessor collected the insurance, and then sued the lessee to collect again for the fire damage. The Supreme Court declared that to permit the lessor to keep the insurance money and also to collect from the lessee would be a double recovery not sanctioned by the law when the lessee had already provided for payment of the damages through the insurance he had contracted and paid for. In the present case the lessor procured the insurance and paid therefor and under the rule laid down in the Publix Theatres case the payment of the insurance in such case does not inure to the benefit of the lessee guilty of wrongfully damaging the leased property.

■ In effect the petitioner would construe the lease provision in this case to exonerate the lessee from liability for its own negligence. To be given this effect a provision must be clear and unambiguous and will be strictly construed by the courts against such an intendment and not given such effect "if any other meaning may reasonably be ascribed to the language employed." Langford v. Nevin, 117 Texas 130, 298 S.W. 536; Continental Trailways, Inc. v. Bowen's Estate, 252 S.W. 2d 222, affirmed 152 Texas 260, 256 S.W. 2d 71. The provision in the lease of the Puckett building certainly does not meet the requirements of such a strict rule of interpretation in order to exonerate the bus company of its negligence.

■ Petitioner also relies upon an agreement with Puckett whereby petitioner surrendered its right to occupy the leased building and Puckett released petitioner from all of the terms of the lease. Petitioner relies upon the above cited case of R. C. Bowen Estate v. Continental Trailways, Inc., 152 Texas 260, 256 S.W. 2d 71, as holding that the above release from the obligations of the lease thereby extinguished this cause of action. It is sufficient to point out that the release obtained by petitioner in this case from Puckett was obtained long after the suit was filed and petitioner had full knowledge of the interests of the two insurance companies which were the real parties prosecuting the suit in Puckett's name. Puckett had assigned his cause of action to the insurance companies and authorized them to sue in his name, and the petitioner was aware of this fact. Under these circumstances Puckett could release only whatever claim he had over and above the amount of damages subrogated and assigned to the insurance companies, and the release signed by Puckett could in no manner prejudice the cause of action of these companies against petitioner. 29 Am. Jur. 1005, Insurance, Sec. 1344, 5 Texas Jur. 42, Assignments, Sec. 33 Puckett recovered no judgment and the insurance companies were awarded judgment for only the amount they had paid under the policies. Petitioner has obtained the full legal benefit of his release from Puckett.

■ Petitioner contends that it should not be compelled to pay for any damage done to the roof of the building because the lease provided:

"5. Lessee shall take good care of the property and its fixtures and shall at its own expense and cost keep said premises, except the roof, in good repair."

Petitioner relies upon the decision in Orr v. Vandygriff, 251 S.W. 2d 573 (no writ). In that case the damage to the roof resulted from a "purely accidental fire" and the lessee was not seeking to construe the lease provision as an exemption from his own negligence. By reason of the policy of strict interpretation of such provisions heretofore discussed this Court will not in this case construe an exemption of the roof from the duty to keep in good repair as a license to the lessee to negligently destroy the roof with immunity.

■ Petitioner's point of error that there is no evidence to support the jury findings as to the reasonable cash market value of the building and its contents before and after the fire has no

merit. In answer to special issues the jury found that the reasonable cash market value of the premises immediately before the fire was $70,000.00 and immediately after the fire was $40,000.00. This was in accord with the exact figures given in the testimony of R. P. Willis, a real estate dealer, who testified that he was familiar with the building both before and after the fire, knew market values of realty in Wichita Falls, knew the reasonable cash market value of the Puckett building, and testified to the values found by the jury. The fact that upon cross-examination Willis stated that he considered the cost of reconstruction goes to the credibility of his testimony, which was for the jury and not this Court. His testimony that he knew the market values of the building before and after, stating the values, is sufficient to sustain the jury verdict as to the damage to the building. There was also the testimony of Puckett as to the market value which would have sustained the verdict. Similarly the testimony sustained the jury findings as to the market values before and after of the contents of the building. The verdict was not as a matter of law excessive.

Petitioner complains of the failure of the trial court to grant a mistrial because one of the members of the jury panel, when being questioned in the selection of the jury, stated that he could not give the bus company a fair trial since it continued to employ a head mechanic who owed him a grocery bill. It also complains that the trial court erred in assuming in Special Issue No. 3 that petitioner was keeping more than 250 gallons of gasoline in the Puckett building at the time of the fire. We believe the court of Civil Appeals correctly disposed of these points for the reasons set forth in the opinion of that court and further discussion is unnecessary.

The judgment of the Court of Civil Appeals is affirmed.

Opinion delivered November 14, 1956.

Rehearing overruled December 19, 1956.