**WYOMING JOHNSON, INC., and Aetna Casualty & Surety Company, Appellants (Plaintiffs),**

v.

**STAG INDUSTRIES, INC., Appellee (Defendant).**

**No. 5806.**

Supreme Court of Wyoming.

April 13, 1983.

Michael J. Sullivan and David G. Lewis of Brown, Drew, Apostolos, Massey & Sullivan, Casper, for appellants.

William S. Bon of Schwartz, Bon, McCrary & Walker, Casper, for appellee.

Before ROONEY, C.J., and RAPER, THOMAS, ROSE and BROWN, JJ.

BROWN, Justice.

Appellant Wyoming Johnson was the general contractor of a construction project. Appellee Stag Industries, Inc. was a subcontractor; Thomas Doyle, an employee of Stag, was injured on the project. Appellant Aetna Casualty & Surety Company, was the liability insurer for Wyoming Johnson at the time of Doyle's injury, and paid the personal injury settlement and costs of defense. Appellants brought an action for indemnity against Stag; the trial court granted summary judgment in favor of Stag.

The issues are:

"1. Do the contractual provisions provide Wyoming Johnson with indemnity protection under the circumstances of this case?

"2. Did the trial court err in failing to find a breach of contract sufficient to entitle Wyoming Johnson to recover?

"3. Is a passively negligent general contractor/indemnitee entitled to indemnification under the contractual provisions?"

We will affirm.

Thomas Doyle was injured after falling through a hole in the roof while working on a construction project to remodel a building owned by Natrona County School District No. 1. After the injury Doyle applied for and received worker's compensation benefits through the account maintained by Stag. Doyle also filed suit against Wyoming Johnson, its job superintendent, and a roofing subcontractor for personal injuries. The complaint alleged numerous acts of negligence against Wyoming Johnson.[1] Wyoming Johnson defended on the basis of lack of negligence, comparative negligence, and lack of a causal relationship between any alleged negligence of Wyoming Johnson or its employees and the injuries suffered.

Wyoming Johnson and Stag had entered into a contract, which, among other things, set out the parties' indemnity arrangement. A demand was made upon Stag and the defense of the Doyle action tendered to it under the contract between Wyoming Johnson and Stag. Stag refused the tender and the case was settled. Appellants then instituted this action for recovery of the settlement amount and related costs on the theories of contractual indemnity and implied indemnity.

Wyoming Johnson does not need to prove actual liability to Doyle to support a claim for indemnity against Stag. It need only prove potential liability to Doyle, since the indemnitor Stag declined to approve the proposed settlement with Doyle or to assume the burden of defense. *Pan American Petroleum Corporation v. Maddux Well Service,* Wyo., 586 P.2d 1220 (1978). Wyoming Johnson denies negligence in the Doyle case, but contends that if it was negligent, its negligence was only passive. In effect Wyoming Johnson concedes that it was potentially liable in the Doyle case. If this were not so, the settlement by appellants would cast them in the role of a volunteer and they would be barred from seeking indemnity.

I

Appellants' principal theory is that the contract between Wyoming Johnson and Stag expressly provided that Stag would indemnify Wyoming Johnson. The relevant

---

1. Negligent acts alleged in complaint:

"* * * Negligent by failing to provide a safe place in which the plaintiff could safely work, failed to properly plan and coordinate work schedules in a safe manner, failed to hire competent subcontractors, failed to provide adequate safety supervision on the job site, failed to provide adequate supervision of the work, failed to provide adequate inspec- tions of the work as it was being completed, failed to require and install handrails around the above described hole in the roof or other- wise make it safe to work in that area, and otherwise failed to comply with safety re- quirements and standards of the Wyoming Occupational Health and Safety Commission. * * *"

terms of the contract between Wyoming Johnson and Stag for the construction project are:

"FIRST: The subcontractor agrees to * * * perform all work * * * in accordance with the general conditions, special conditions, specifications and contract documents between the Contractor and Owner. *The subcontractor agrees to be bound to the Contractor by the same terms, as the Contractor's contract with the Owner and assume toward the Contractor all obligations and responsibilities which the Contractor by contract, assumes toward the Owner.* * * * " (Emphasis added.)

"SECOND: * * * The Subcontractor further agrees to carry sufficient compensation, contractual liability and public liability insurance in the minimum amounts stipulated in the contract documents, to protect his workmen at all times and save the Contractor harmless, *and to fully indemnify the Contractor from any liability or suit arising from the acts or omissions of the Subcontractor,* including all costs attached to the same. * * * " (Emphasis added.)

"NINTH: The Subcontractor specifically further obligates himself to the Contractor in the following respect, to-wit: *To indemnify Contractor against and save him harmless from any and all claims, suits or liability* for injuries to property, injuries to persons including death and from any other claims, suits or liability *on account of any act or omission of Subcontractor, or any of his officers, agents, employees or servants.*" (Emphasis added.)

█ In the contract between Wyoming Johnson and Stag the ninth paragraph provides that Stag will indemnify Wyoming Johnson for liability incurred on account of "any act or omission of subcontractor." The second paragraph of this agreement provides for insurance to indemnify Wyoming Johnson for liability arising from "acts or omissions of the subcontractor."

The second paragraph of such contract does not expand the coverage, but only indicates what risk the subcontractor must insure against, that is, liability that Wyoming Johnson may incur because of "acts or omissions of the subcontractor," Stag. The acts of negligence alleged in the Doyle complaint are acts or omissions of Wyoming Johnson, its foreman, or the roofing subcontractor, but are not acts or omissions of Stag. Furthermore, the complaint did not allege that Wyoming Johnson was vicariously liable because of negligent acts of appellee Stag or because of some theory of no fault liability, or because of a nondelegable duty. Appellants' claim for indemnity, then, must fail under the ninth paragraph of the Wyoming Johnson-Stag contract.

The subcontract also incorporated by reference the terms of the prime contract between Wyoming Johnson and the owner, Natrona County School District No. 1.[2] The relevant terms include:

"4.18.1 To the fullest extent permitted by law, the Contractor * * * *shall indemnify and hold harmless the Owner* and the Architect * * * and their agents and employees *from and against all claims,* damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from the performance of the Work, provided that any such claim, damage, loss or expense (1) is attributable to bodily injury, * * * and (2) *is caused in whole or in part by any negligent act or omission of the Contractor, * * * anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable,* regardless of whether or not it is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or otherwise reduce any other right or obligation of indemnity which would otherwise exist as to any party or person described in this Paragraph 4.18." (Emphasis added.)

---

2. The prime contract between the owner, Natrona County School District No. 1, and Wyoming Johnson is a standard contract which says that it is to be used with the latest edition of AIA Document A201, General Conditions of the Contract for Construction.

The indemnification clauses further provided that any indemnification obligation would not be limited in any way by worker's compensation acts.

Appellants argue that the first paragraph of the Wyoming Johnson-Stag contract imposes the same liability for indemnity on Stag as Wyoming Johnson had to the owner, Natrona County School District No. 1, including its own negligence. The indemnity provision in the owner-Wyoming Johnson contract is much broader than the indemnity provisions in the Wyoming Johnson-Stag contract. The former says indemnity for "all claims, damages, losses and expenses," while the latter is limited to indemnity for "acts or omissions of the subcontractor."

We must determine, then, if the contract between Wyoming Johnson and Stag imposed liability on Stag to indemnify Wyoming Johnson for losses it incurred in circumstances other than for the acts or omissions of Stag, as provided for in the ninth paragraph of the subcontract. There is abundant authority that it does not.

■ An examination of these authorities discloses that contracts for indemnity are to be construed strictly against the indemnitee.

"A contract of indemnity purporting or claimed to relieve one from the consequence of his failure to exercise ordinary care must be strictly construed. Accordingly, it is frequently stated as the general rule that a contract of indemnity will not be construed to indemnify the indemnitee against losses resulting from his own negligent acts unless such intention is expressed in clear and unequivocal terms, or unless no other meaning can be ascribed to it. Mere general, broad, and seemingly all-inclusive language in the indemnifying agreement has been said not to be sufficient to impose liability for the indemnitee's own negligence. It has been so held, for instance, with regard to the words 'any and all liability.' * * *" 41 Am.Jur.2d, Indemnity, § 15, pp. 699, 700 (1968).

"Where the injury was caused by the concurrent negligence of the indemnitor and the indemnitee, the courts have frequently read into contracts of indemnity exceptions for injuries caused in part by the indemnitee, although there is authority to the contrary. Even the fact that the contract requires the indemnitor to hold the indemnitee harmless from damage caused by the indemnitor's 'negligent acts and omissions' has been held insufficient to make the indemnity clause applicable in a case where the indemnitee's negligence concurred with that of the indemnitor to cause the injury." 41 Am. Jur.2d, Indemnity, § 16, pp. 703, 704 (1968).

■ Generally, contracts exculpating one from the consequences of his own acts are looked upon with disfavor by the courts. *Kansas City Power & Light Company v. United Telephone Company of Kansas, Inc.,* 458 F.2d 177 (10th Cir.1972). Therefore, an agreement for indemnity is construed strictly against the indemnitee, particularly when the indemnitee was the drafter of the instrument. *Allison Steel Manufacturing Co. v. Superior Court in and for County of Pima,* 22 Ariz.App. 76, 523 P.2d 803 (1974). If the indemnitee means to throw the loss upon the indemnitor for a fault in which he himself individually shares, he must express that purpose beyond any peradventure of doubt. *Mostyn v. Delaware L. & W.R. Co.,* 160 F.2d 15 (2nd Cir.1947). The test is whether the contract language specifically focuses attention on the fact that by the agreement the indemnitor was assuming liability for indemnitee's own negligence. *Sweetman v. Strescon Industries, Inc.,* Del. Super., 389 A.2d 1319 (1978).

■ A provision in the subcontract that the subcontractor is obligated to the general contractor the same as the general contractor is obligated to the owner under the prime contract is not a clear and unequivocal agreement to indemnify the general contractor on account of its own negligence. *Allison Steel Manufacturing Co. v. Superior Court in and for County of Pima,* supra; and *Goldman v. Ecco-Phoenix Electric Cor-*

*poration,* 41 Cal.Rptr. 73, 62 Cal.2d 40, 396 P.2d 377 (1964).

In *Goldman v. Ecco-Phoenix Electric Corporation,* supra, the contract between the general contractor and the owner provided that the general contractor would indemnify and save harmless the owner from liability of every kind arising from the performance of a contract or work, regardless of the responsibility for negligence. The subcontract agreement provided that the subcontractor would be bound to the general contractor in the same manner and to the same extent as the general contractor would be bound to the owner under the principal contract to the extent of work provided for in the subcontract agreement. The California Supreme Court, in holding that the subcontractor had no obligation to indemnify the contractor against his own negligence, stated:

> " * * * In view of the general rule that an implied indemnity does not reach to protect the indemnitee from a loss to which his negligence has contributed, we must look at least for an express undertaking in the document that he is to do so. If one intends to do more than merely incorporate the general rule into the written document, he will be required to fix the greater obligation in specific terms. And the extent of the purported indemnitor's liability must be determined from an objective assessment of the language of the instrument. *Goldman v. Ecco-Phoenix Electric Corporation,* supra, at 379.

> \*     \*     \*     \*     \*     \*

> " * * * We conclude only that an indemnification agreement calling for financial protection against one's own negligence cannot rest upon language so loose and obscure as that of the instant contract. * * * In the special circumstances of this undertaking of the subcontractor to hold the contractor harmless for its own negligence and in the use of this printed form contract for that purpose, we hold that the imposition of the obligation must be clear and express." Id., at 382.

In *Allison Steel Manufacturing Company v. Superior Court of Pima,* supra, the general contractor attempted to bring the subcontractor under the indemnity provisions of the prime contract by making reference to the general conditions in the subcontract. The indemnity provision in the prime contract in Allison, paragraph 4.18.1, AIA Document A201, is the identical indemnity provision provided for in the prime contract here, the agreement between the owner and Wyoming Johnson. In Allison, a provision in the subcontract is substantially the same as the first paragraph in the subcontract here. It attempts to impose on the subcontractor the same obligation that the contractor had to the owner. The Arizona Court of Appeals held that the incorporation by reference of the general conditions which included paragraph 4.18.1 on indemnification failed to express an intent in clear and unequivocal terms to indemnify the contractor against its own negligence.

The first paragraph of the Wyoming Johnson-Stag contract provides in part:

> "The subcontractor hereby agrees to be bound to the Contractor, by the same terms, as the Contractor's contract with the Owner and assumes toward the Contractor all obligations and responsibilities which the Contractor, by contract, assumes toward the Owner.   * * * "

This provision of the contract does not mention the word "indemnity" or "indemnification." The language could easily be construed to refer to materials to be furnished and work to be performed. Work and materials are discussed in the other provisions of the first paragraph. In context then, it is logical to construe the first paragraph of the parties' contract to mean that the subcontractor is obligated to the contractor in the same manner as the contractor is obligated to the owner to furnish materials and perform work contemplated by the contract, and we assume that the trial court so construed it. The broad indemnity provisions contained in the owner-Wyoming Johnson contract for indemnity to the owner for all "claims, damages, losses or expenses," even if caused in part by Wyoming Johnson, has no application here and cannot

be used to extend an indemnity obligation to Stag.

In holding as we have here, we recognize that it has never been judicially determined that Wyoming Johnson was negligent. Furthermore, we are not assuming negligence on the part of Wyoming Johnson. Our holding is limited to a determination that the subcontract between Wyoming Johnson and Stag is not sufficient to extend Stag's liability for indemnification further than the liability set out in the ninth paragraph of the subcontract, that is, for "act or omission of the subcontractor, or any of his officers, agents, employees or servants." The negligence in issue in this case and the underlying suit was the possible negligence of Wyoming Johnson, not Stag. The subcontract is insufficient to impose the same liability for indemnification on Stag as the prime contract imposed on Wyoming Johnson to the owner.

## II

Appellants assert that they are entitled to indemnity because of an express contract. Alternatively, they assert their claim for indemnity on the theory of breach of contract. Appellants also contend that Wyoming Johnson's negligence, if any, was only passive while Stag's negligence was active, and therefore, Wyoming Johnson is entitled to indemnity, citing *Mountain Fuel Supply v. Emerson,* Wyo., 578 P.2d 1351, 1358 (1978); and *Miller v. New York Oil Company,* Wyo., 34 Wyo. 272, 243 P. 118 (1925). These theories of indemnification are essentially implied indemnification theories or common law theories.

Appellants cite *Cline v. Sawyer,* Wyo., 600 P.2d 725 (1979), for the principle that there is an implied warranty in construction contracts that the work will be performed in a "skillful, careful, diligent and workmanlike manner." Appellant contends that Stag breached this implied warranty, and that appellants incurred damages attributable to the breach, and therefore, are entitled to indemnity.

Here Wyoming Johnson and Stag had a contract. The contract set out the indemnity agreement of the parties. It has not been suggested that this specific indemnity agreement did not reflect the intention of the parties. The area of indemnity has been preempted by an express agreement setting out the extent and limitation of the indemnity understanding. We do not think that the indemnity agreement of the parties should be expanded, enlarged, or rewritten for them. Implied theories of indemnity are not viable in the face of an express indemnity agreement. *Frederick v. Hess Oil Virgin Islands Corporation,* 492 F.Supp. 1338 (D.C.V.I.1980); *Jones & Laughlin Steel Corp. v. Johns-Manville Sales Corp.,* 453 F.Supp. 527 (D.C.W.D.Pa.1978); *City and Borough of Juneau v. Alaska Electric Light & Power Company,* Alaska, 622 P.2d 954 (1981); *County of Alameda v. Southern Pacific Company,* 55 Cal.2d 479, 11 Cal.Rptr. 751, 360 P.2d 327 (1961); *Howard, Needles, Tammen and Bergendoff v. Steers, Perini & Pomeroy,* Del.Super., 312 A.2d 621 (1973); *Waller v. J.E. Brenneman Company,* Del. Super., 307 A.2d 550 (1973); *Quilico v. Union Oil Co. of California,* 58 Ill.App.3d 87, 15 Ill.Dec. 784, 374 N.E.2d 219 (1978); *Royer Foundry & Machine Company v. New Hampshire Grey Iron, Inc.,* 118 N.H. 649, 392 A.2d 145 (1978); *Eazor Express, Inc. v. J.R. Barkley,* 441 Pa. 429, 272 A.2d 893 (1971).

> "We also agree with the court below that the question of liability is not to be determined under any common law obligation apart from the contract. We think it important to examine the rules of the common law in order more accurately to determine the meaning of the written contract. This we shall develop hereafter. But, since the parties have themselves dealt with the question of indemnity in their written contract, we think it is fair to say that they intended it, rather than some general common law rule, to govern their rights and liabilities in this situation." *Booth-Kelly Lumber Co. v. Southern Pacific Co.,* 183 F.2d 902, 906, 907 (9th Cir.1950).

There are hundreds of cases involving indemnity actions between a general con-

tractor and its subcontractor. Ordinarily, indemnity on the theory of breach of contract or passive negligence as opposed to active negligence is asserted when there is no express contractual provision for indemnity. In the cases where there is an express contractual provision for indemnity and the parties raise as alternative theories of indemnity, breach of contract or passive negligence, the courts usually hold that the express contractual provision for indemnity governs, and that the theories of breach of contract or passive negligence should not be allowed to enlarge upon or expand the express contractual provisions for indemnity. The rationale is that the parties knowingly and adequately set out their intention in the express contractual agreement with respect to indemnity.

In *Howard, Needles, Tammen and Bergendoff v. Steers, Perini & Pomeroy,* supra, there was a written contract that expressly set forth the indemnity liability of the party for whom indemnity was sought. In that case the Delaware court said:

"* * * We hold, however, that when the parties to a contract have entered into a written agreement, expressly setting forth one party's indemnity liability, there is no room for any enlargement of that obligation by implication. * * *" Id., at 624.

"Where a written contract exists which includes a specific indemnification provision setting forth the rights and duties of the parties, the specific provision should govern and the courts should not enlarge the right to indemnification by implication. [Citations.] Brenneman and G & H specifically outlined their rights and duties as to indemnification in the subcontract. This provision should govern; no additional right of indemnification should be implied from the breach of an independent provision of the subcontract. Waller v. J.E. Brenneman Company, supra, at 553.

In *Eazor Express, Inc. v. J.R. Barkley,* supra, at 895, the court said:

"The appellant in its brief relies on various cases in which our Court has recog-

nized an *implied* contract of indemnity in favor of a person who, without active fault on his part, has been legally obliged to pay damages caused by the negligence of another. [Citations.] These cases, however, are not apposite where, as here, there is a written contract setting forth the rights and duties of the parties. The contract must then govern. * * * "

"* * * In an indemnity action arising out of contract, the 'application of the theories of "active" or "passive" as well as "primary" and "secondary" negligence is inappropriate.' [Citations.]" *Ferguson v. Town Pump, Inc.,* 177 Mont. 122, 580 P.2d 915, 920 (1978).

"When the contractual obligation supersedes the common-law rules respecting the rights to indemnification or contribution by one of two negligent parties there is another consequence to contractual indemnification which the appellant Industry ignores. In that area the application of the theories of 'active' and 'passive,' as well as 'primary' or 'secondary,' negligence becomes inappropriate. [Citations.]" *Southern Pacific Company v. Morrison-Knudsen Company,* 216 Or. 398, 338 P.2d 665, 670–671 (1958).

■ We hold that when parties have entered into a written contract which includes an express indemnification provision, the express provision controls. It is inappropriate to enlarge or add rights of indemnification to the express provision by implication. In this case, where the express indemnity agreement was insufficient to impose liability on Stag for the potential negligence of Wyoming Johnson, the law will not create the liability by using a common law theory to rewrite the contract.

Affirmed.