ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Appellant (Third-Party Plaintiff),

C.J. Abbott, Inc., (Third-Party Plaintiff),

v.

GILPATRICK CONSTRUCTION CO., INC., Appellee (Third-Party Defendant),

v.

Tom M. JOHNSON, (Plaintiff),

v.

C.J. ABBOTT, INC., a Wyoming corporation, Mark Justice Gilpatrick, a/k/a Dick Gilpatrick, Bob Kyselmire and Roy Norman, (Defendants).

No. 86–173.

Supreme Court of Wyoming.

Jan. 29, 1987.

J. Kent Rutledge and Peter K. Michael of Lathrop & Uchner, P.C., Cheyenne, for appellant (third-party plaintiff).

John R. Vincent of Hettinger and Leedy, P.C., Riverton, for appellee (third-party defendant).

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

MACY, Justice.

This is an appeal from a district court judgment in favor of Gilpatrick Construction Co., Inc., appellee, on a third-party complaint for indemnification. We are asked to determine whether the indemnification provisions at issue are sufficiently explicit to require indemnification by Gilpatrick. We find that the provisions are sufficiently explicit, and we reverse.

The parties stipulated to the following facts. In June of 1980, C.J. Abbott, Inc. contracted with the Wyoming State Highway Commission to do road work in Carbon County, Wyoming. In July of 1980, Abbott entered into a subcontract with Gilpatrick in which Gilpatrick agreed to perform the rock crushing work associated with the road project. The following provisions of the subcontract are relevant:

"V. To save the Owner and the Contractor harmless from all loss, cost or expense resulting either directly or indirectly from the failure of the Sub-Contractor faithfully to carry out any provision of this Sub-Contract.

\*     \*     \*     \*     \*     \*

"VII. To adequately and properly protect his work of construction by lights, barriers, supports, signs and guards so as to avoid injury or damage to persons or property and to be directly responsible for damages to persons and property occasioned by failure so to do, or by any negligence of the Sub-Contractor or any of his officers, agents or employees in the performance of his work. The standards of protection shall be not less than those specified in the General Contract or required by law.

\*     \*     \*     \*     \*     \*

"IX. To be bound to the Contractor by the terms of the General Contract, to conform to and comply with all of the terms of the General Contract and to assume toward the Contractor all the duties and obligations that the Contractor assumes in the General Contract toward the Owner in so far as they are

applicable to this Sub-Contract unless changed in this Sub-Contract.

\* \* \* \* \* \*

"XII. To comply with all applicable federal, state and municipal laws and/or ordinances and regulations effective where the work is to be performed under this Sub-Contract and to pay all costs and expenses connected with such compliance; to pay all taxes, assessments and premiums under the federal social security act or any applicable unemployment insurance, disability benefit, old age benefit or retirement act, all sales and use taxes, all personal property taxes, all transportation taxes and all other taxes payable by reason of the Sub-Contractor's work; and to furnish all necessary reports and information to the appropriate federal, state and municipal agencies with respect to all of the foregoing, the same as though the Sub-Contractor was in fact the Contractor."

In October of 1980, Tom Johnson, an employee of Gilpatrick, was injured while working on the road project when he became entangled in a rock crushing machine owned and operated by Gilpatrick. The accident was caused by the absence of a guard on the feed belt of the machine. Johnson filed suit against Abbott and three employees of Gilpatrick.

In his claim against Abbott, Johnson alleged that the contract with the State imposed certain safety requirements upon Abbott and that Abbott was negligent and breached its contractual duties in failing to see that the safety requirements were observed. In contrast, Abbott argued that the obligation to comply with the safety requirements was expressly delegated to Gilpatrick in the subcontract, and thus any liability for breach of contract or negligence in failing to provide adequate safety measures must be assumed by Gilpatrick. On that basis, Abbott demanded that Gilpatrick assume the defense in the action filed by Johnson. When Gilpatrick refused, Abbott filed a third-party complaint naming Gilpatrick as defendant.

Prior to trial on the original complaint, Abbott's insurance carrier, St. Paul Fire and Marine Insurance Company, appellant, offered Johnson $20,000 to settle the claim against Abbott. Johnson accepted, and Abbott was dismissed from the action. St. Paul was then substituted as third-party plaintiff on the third-party complaint against Gilpatrick. The third-party complaint was submitted to the district court for disposition upon stipulated facts in lieu of trial.

In denying St. Paul's claim for indemnification, the district court found this Court's holding in *Wyoming Johnson, Inc. v. Stag Industries, Inc.*, Wyo., 662 P.2d 96 (1983), to be controlling. We do not find it to be controlling and reverse the district court's order.

In *Wyoming Johnson, Inc.*, we were asked to construe the following contract provision:

" 'FIRST: \* \* \* The subcontractor agrees to be bound to the Contractor by the same terms, as the Contractor's contract with the Owner and assume toward the Contractor all obligations and responsibilities which the Contractor by contract, assumes toward the Owner. \* \* ' [Emphasis omitted.]

" 'SECOND: \* \* \* The Subcontractor further agrees \* \* \* to fully indemnify the Contractor from any liability or suit arising from the acts or omissions of the Subcontractor, including all costs attached to the same. \* \* \* ' [Emphasis omitted.]

" 'NINTH: The Subcontractor specifically further obligates himself to the Contractor in the following respect, to-wit: To indemnify Contractor against and save him harmless from any and all claims, suits or liability for injuries to property, injuries to persons including death and from any other claims, suits or liability on account of any act or omission of Subcontractor, or any of his officers, agents, employees or servants.' [Emphasis omitted.]" *Id.* at 98.

We found the broad language of the first paragraph to be insufficient to impose the

same obligations and responsibilities on the subcontractor as the general contract imposed on the contractor. Absent some more specific provision delegating the contractor's obligations under the general contract to the subcontractor, we could find no basis for granting the claim for indemnification. We then looked to the remaining provisions to determine the extent of the subcontractor's liability for indemnification. Under the second and ninth paragraphs, we found that the subcontractor was required to indemnify the contractor only for liability resulting from its own acts or omissions or those of its officers, agents, employees, or servants. Because the complaint alleged liability resulting only from the acts or omissions of the contractor, not the subcontractor, and because we found the all-encompassing language of the first paragraph to be too broad to impose liability on the subcontractor for those acts and omissions, we held that the subcontractor was not required to indemnify the contractor.

In the present case, paragraph IX of the subcontract contains the same broad language we found insufficient in Wyoming Johnson, Inc. Absent some more specific provision delegating Abbott's obligations under the general contract to Gilpatrick, we would be compelled under *Wyoming Johnson, Inc.* to deny St. Paul's claim for indemnification. However, as demonstrated previously, the subcontract in the present case goes further and expressly requires Gilpatrick to protect against injury at its work site and to assume responsibility for damages caused by its failure to do so. Among the measures enumerated to protect against injury are lights, barriers, supports, signs, and guards. In addition, the subcontract specifically provides that Gilpatrick will be responsible for any loss resulting from its failure to carry out any provision of the subcontract. Finally, the subcontract specifically provides that Gilpatrick will comply with all applicable federal, state, and municipal laws, ordinances, and regulations effective where the work is performed. Unlike the broad provision construed in *Wyoming Johnson,*

*Inc.*, these provisions express an intent in clear and unequivocal terms to impose liability on Gilpatrick for injuries resulting from the failure to provide adequate safety measures.

Having concluded that *Wyoming Johnson, Inc.* does not require denial of the indemnification claim, the only questions remaining are whether Gilpatrick failed to provide adequate safety measures as required by the subcontract and whether such failure caused the loss to St. Paul. The parties stipulated that there is sufficient evidence to show that the feed belt of the rock crushing machine did not have a guard as required by 30 CFR 56.14-1 and that the absence of the guard was the cause of the accident. Therefore, we reverse the district court's order denying St. Paul's claim for indemnification by Gilpatrick.

THOMAS, Justice, specially concurring.

In disposing of this case we need to account for other prior decisions by this court which address this problem. In *Mountain Fuel Supply Co. v. Emerson,* Wyo., 578 P.2d 1351 (1978), we construed language in an agreement which appears to have been somewhat more specific than this agreement as manifesting an intention to indemnify *Mountain Fuel Supply Co.* from the consequences of its own negligence. In that case, however, we held the indemnification agreement unenforceable because of the provisions of § 30–28.3, et seq., W.S.1957, C.1967, Cum.Supp.1975, which now is codified as § 30–1–131, et seq., W.S.1977.

Next the court addressed this question in *Pan American Petroleum Corporation v. Maddux Well Service,* Wyo., 586 P.2d 1220 (1978). In that case we recognized a right of indemnity under circumstances such as those presented by this case, and we sent the case back for trial on the implied indemnity claim asserted by Pan American. With respect to a contractual indemnity claim we held that the language in the contract was not sufficient to create the right of indemnity, but we were critical of

an argument that we concluded tended to confuse the law of torts with the law of indemnification. We pointed out in that case that the liability of Maddux to Pan American Petroleum Corporation was to be determined by reference to the independent obligations which Maddux owed to Pan American.

The court next decided *Wyoming Johnson, Inc. v. Stag Industries, Inc.,* Wyo., 662 P.2d 96 (1983), in which we again recognized a right of indemnity in factual circumstances such as these, but we held that the contractual language was not sufficient to justify the claim. In *Cities Service Co. v. Northern Production Co.,* Wyo., 705 P.2d 321 (1985), we cited *Wyoming Johnson, Inc. v. Stag Industries, Inc.,* supra, for the proposition that, "where the agreement, in clear and unambiguous language and beyond peradventure when strictly construed, provides indemnification against one's own negligence, it will be upheld." *Cities Service Co. v. Northern Production Co.,* supra, at 326. In this latter case we held that a strict construction of the contractual language would pertain with respect to an assertion that Northern Production Co. had agreed to provide indemnity to Cities Service Co. against Cities Service Co.'s own negligence. With respect, however, to the contention that the agreement was sufficient to indemnify Cities Service Co. for the negligence of Northern Production Co. we applied a rule of liberal construction. We then held that the agreement was not one to indemnify Cities Service Co. for its own negligence; the agreement was not void but valid; and it was not unenforceable because of the provisions of § 30–1–131, W.S.1977.

Then in *Reliance Insurance Co. v. Chevron U.S.A., Inc.,* Wyo., 713 P.2d 766 (1986) we again construed the provisions of § 30–1–131, et seq., W.S.1977, with respect to a question of law certified to this court by the United States District Court. In the process, however, we recognized the contractual efficacy of an indemnity clause indemnifying " 'against all loss, damage, liability, claims and liens of every kind aris-ing out of or attributable, directly or indirectly, to the operations of Contractor hereunder, including without limitation, all claims for injury to or death of persons, loss of or damage to property * * *.' " *Reliance Insurance Co. v. Chevron U.S.A., Inc.,* supra, 713 P.2d at 768.

It thus appears that this court has adopted a rule of strict construction with respect to contractual agreements to indemnify a party such as C.J. Abbott, Inc. against the consequences of its own negligence. If the claimed agreement, however, is one indemnifying a party such as C.J. Abbott, Inc. against the consequences of the negligence or other conduct on the part of the indemnitor, Gilpatrick Construction Co., Inc., in this instance, then a rule of liberal construction in support of the right of the parties to contract will be applied. I am satisfied that the result in this case is consistent with our earlier cases including *Wyoming Johnson, Inc. v. Stag Industries, Inc.,* supra.

In *Wyoming Johnson, Inc. v. Stag Industries, Inc.,* supra, we concluded that the adoption of a provision in a sub-contract of the duty of the general contractor to indemnify the owner did not amount to a clear and unequivocal agreement to indemnify the general contractor from the consequences of its own negligence. Proceeding to address a claim for indemnity premised upon a theory of breach of contract, we construed the contract as containing language which limited the duty to indemnify to the acts or omissions of the sub-contractor. The claims in the injured workman's complaint were for the negligence of the general contractor, and there was no additional information in the record relating to actual cause. Consequently we denied the right to indemnity in that case.

The difference in this case is that the parties have stipulated that the injuries to Tom Johnson were proximately caused by the absence of a guard on the feedbelt of Gilpatrick's rock crushing machine. Gilpatrick had agreed to comply with governmental regulations which required such a

guard, and also had agreed to indemnify C.J. Abbott, Inc. for consequences resulting from Gilpatrick's failure to carry out any provision of the subcontract. The record goes beyond the allegations in the injured workman's complaint. This case then stands for the proposition that if the injury clearly results from a failure of the sub-contractor to perform a contractual duty an agreement by the sub-contractor to indemnify the contractor for the failure of the sub-contractor to properly perform its obligations under the sub-contract is sufficient to demonstrate a right of express contractual indemnity. This result and this holding is consistent with the previous cases in which we have addressed this problem, and presents a just result.

URBIGKIT, Justice, specially concurring.

Although I do not have general disagreement with the court's opinion, I would specially concur for the reason that *Wyoming Johnson, Inc. v. Stag Industries,* Wyo., 662 P.2d 96 (1983), is not necessarily applicable to the facts of this case. In *Wyoming Johnson,* the item of injury (roof) was under the general control of the contractor and not the indemnifying subcontractor, with the contendable result that the subcontractor was called to indemnify the general contractor for the results of the operational negligence of the general contractor.

Conversely in this case, the item of injury (rock crusher) was owned by and under the control of the indemnifying subcontractor. Consequently, the subcontractor is asked to indemnify the general contractor for only the subcontractor's negligence in maintenance of a dangerous machine, which may additionally expose the general contractor to liability by failure of supervision of the subcontractor or other nondelegable duty. *Jones v. Chevron U.S.A., Inc.,* Wyo., 718 P.2d 890 (1986).

For this reason, I would not necessarily find *Wyoming Johnson* persuasive here, even if, as discussed by the court, the sin-

gular difference in the language of the indemnifying agreements did not exist.