Steven R. Helling of Murane & Bostwick, Casper, for appellant.

R. Michael Mullikin of Mullikin, Larson & Swift, Jackson, for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

**Statt BERGER, d/b/a Statt's Plumbing, Appellant (Defendant/Cross–Claimant),**

v.

**TETON SHADOWS INCORPORATED, a Wyoming corporation, Appellee (Defendant/Cross–Claimant).**

No. 90–31.

Supreme Court of Wyoming.

Nov. 5, 1991.

## OPINION

MACY, Justice.

Appellant Statt Berger appeals from the district court's judgment awarding damages to Appellee Teton Shadows Incorporated resulting from a fire at a condominium project in Teton County. Berger and Teton Shadows stipulated that Teton Shadows' damages totaled $120,000. At the conclusion of a two-day bench trial, the district court found, *inter alia*, that Berger's negligence caused the fire, and it granted judgment in favor of Teton Shadows for the full $120,000.[1] Berger does

1. Teton Shadows' insurance company, Moun- tain West Farm Bureau Mutual Insurance Com-

not appeal from the district court's finding of negligence. Berger's appeal, instead, focuses upon the district court's interpretation of the parties' written agreement.

We reverse in part and affirm in part.

Berger raises the following issues:

1. Did the trial court err in awarding Appellee judgment against Appellant for damages caused by fire, in light of Appellee's contractual agreement to provide fire insurance?

2. Did the trial court err in allowing a subrogated claim by Appellee's insurer in light of Appellee's contractual agreement to provide fire insurance and further in light of Appellant's claim of being a co-insured under Appellee's insurance policy, since the policy provided coverage for the personal property of others, including Appellant?

3. Did the trial court err in not entering judgment in favor of Appellant and against Appellee for the damages sustained by Appellant as a result of the fire, in light of Appellee's contractual agreement to provide fire insurance?

Teton Shadows responds with the following issues:

1. Whether Teton Shadows contractually waived the right to pursue a claim for ordinary negligence against Berger (or agreed to indemnify Berger for his own negligence) as to any loss due to Berger's negligence for either the insured portion of the claim, the uninsured portion of the claim or both.

2. Whether Berger was a "co-insured" under or a party to the policy of Farm Bureau so as to preclude recovery by Farm Bureau of its subrogated interest in the claim of Teton Shadows for the negligence of Berger.

3. Whether Berger is the real party in interest with regard to any claim seeking to recover amounts paid to Mateosky

in settlement of Mateosky's claim against Berger for negligence.

4. Whether Berger stated a claim under any judicially recognizable theory upon which relief could be granted for the recovery of amounts paid by CIGNA (his insurance company) to Mateosky based on a claim that Berger was negligent.

Teton Shadows, owner/general contractor, hired Berger as a subcontractor to do the plumbing on the project. The terms of their agreement were set out in a written contract.[2] The dispute centered on the contract provision, "Owner to carry fire, tornado and other necessary insurance." Berger argued that this provision required the owner (Teton Shadows) to insure the project against fire and, thereby, shifted the risk of loss to Teton Shadows' insurance carrier. Teton Shadows claimed that, notwithstanding this provision, Berger was still responsible for the damages which resulted from his negligence.

In *True Oil Company v. Sinclair Oil Corporation*, 771 P.2d 781, 790 (Wyo.1989) (citations omitted), we reviewed this Court's role in contract interpretation:

The determination of the parties' intent is our prime focus in construing or interpreting a contract. "If an agreement is in writing and the language is clear and unambiguous, the intention is to be secured from the words of the agreement." *Nelson v. Nelson*, 740 P.2d 939, 940 (Wyo.1987). When the language is clear and unambiguous, the writing as a whole should be considered, taking into account relationships between various parts. Contract construction and interpretation are done by the court as a matter of law.

It is also true in contract interpretation that, " 'Ambiguity ... is not generated by subsequent disagreement of the parties concerning [the contract's] meaning.' "

---

pany, paid $103,000 of the loss under its builder's risk policy, leaving $17,000 unpaid as an uninsured loss. Teton Shadows' risk policy included fire insurance. This appeal involves both Farm Bureau's subrogated claim of $103,000 and Teton Shadows' uninsured loss (non-subrogated claim) of $17,000.

**2.** The parties' contract consisted of Berger's proposal to furnish materials and labor and Teton Shadows' acceptance of the proposal.

*Ricci v. New Hampshire Insurance Company*, 721 P.2d 1081, 1085 (Wyo.1986).

In a Florida case with facts nearly identical to those in this case, the plumber's alleged negligence caused a fire which damaged the owner's insured property. *Housing Investment Corporation v. Carris*, 389 So.2d 689 (Fla.App.1980). The owner's insurance carrier paid the loss and sought subrogation. The Florida court denied subrogation because the parties' contract provided, " 'Owner to carry fire, tornado, and other necessary insurance.' "[3] *Id.* at 689. The court reasoned:

> [T]he parties foresaw the possibility of loss by fire arising from construction work and ... the contract provision was for the purpose of providing protection from that risk by use of insurance.

*Id.* at 689–90. The Florida court discussed the rationale for parties shifting the risk of loss to the insurance carrier:

> The owner had, as all owners always have, the right to insure his own property for his own exclusive benefit without the consent or agreement of the contractor or anyone else. Therefore, the only reasonably conceivable purpose of a construction contract provision placing an obligation on the owner to carry insurance is to benefit the contractor by providing him protection and exculpation from risk of liability for the insured loss. Although the contractor was not named as an insured, nor does the contract require this to be done, the contract insurance provision is valuable to the contractor for the very purpose this case exemplifies and serves to limit the owner to insurance proceeds even though the loss was caused by the negligence of the contractor.

*Id.* at 690.

In this case, the parties' contract was unambiguous. The contract provision, owner to carry fire insurance, clearly expressed the parties' intent to shift the risk to Teton Shadows' insurance carrier. We agree with the Florida court's reasoning and hold that Teton Shadows is limited to the proceeds of its insurance policy for its

recovery. The district court's $120,000 judgment for Teton Shadows is reversed.

Because the parties' contract was unambiguous, we do not need to decide whether Berger was a co-insured under Teton Shadows' builder's risk policy. As to Berger's third issue, the district court did not err in denying Berger's cross-claim against Teton Shadows for damages. Berger does not cite any authority or present a cogent argument to support his claim that Teton Shadows agreed to insure against the losses which Berger suffered due to the fire. *Bland v. State*, 803 P.2d 856 (Wyo.1990).

Reversed in part and affirmed in part.

THOMAS, J., dissenting, with GOLDEN, J., joining.

GOLDEN, J., dissenting.

THOMAS, Justice, dissenting, with whom GOLDEN, Justice, joins.

I dissent from the disposition of this case according to the majority opinion. I agree with the views expressed in the dissenting opinion of Justice Golden, in which I join. I am further persuaded that *Carris v. Housing Investment Corporation*, 389 So.2d 689 (Fla.App.1980), the cases upon which it relies, and other cases of similar tenor suffer from a fundamental fault in analysis that, for me, dictates a different result.

The articulated rationale found in such cases is that since an owner always has a right to insure his property, a provision in a construction contract assigning the responsibility for obtaining coverage to the owner would have no efficacy other than to include the contractor as an insured. It follows according to the reasoning of those courts that no action will lie against the contractor, even for a loss caused by his own negligence, because an insurance carrier cannot seek recoupment from its insured. The cases do not seem to consider the proposition that the contractor might have no insurable interest in the property other than the work that the contractor had performed. If the cases were limited to including the contractor as an insured to

---

**3.** This provision is identical to the one at issue in this case.

the extent of the contractor's insurable interest, they would be far more sound.

The majority asserts that a provision of a construction contract that provides, "Owner to carry fire, tornado and other necessary insurance," is a clear expression of the intent of the parties that the risk is to be shifted to the insurance carrier selected by the owner, including the risk of the contractor's negligence. I can find a clear expression of an intent that as between the owner and contractor, the owner is going to accept the expense and the necessary investment of time and effort to obtain the insurance alluded to in their agreement. Anything beyond that is conjecture that leads to a legal fiction.

The fallacy of the approach adopted by the majority, as I see the situation, is that an insurance policy obtained by the owner of property, covering certain limited risks to his property, becomes in an almost mystical way a liability policy for the contractor, covering the risk of the contractor's negligence. I submit that is an entirely different risk from the risks for which the insurance carrier received its premium, and that the insurance carrier clearly would be entitled to an additional premium for covering the negligence of the contractor. In fact the policy provisions would be markedly different. In a larger context of public policy, this rule provides very little incentive to the contractor to use due care.

The possibility that the contractor did, in fact, have liability insurance for which an appropriate premium had been paid is ignored. I have some tolerance for legal fictions but, in the field of insurance, I have accepted the proposition that risk coverage should be tied to the insurance contract and the risks for which a premium is paid. If the contractor had liability insurance, then that insurance company should pay for this loss and, if the contractor for some reason had no coverage, the rule should be the same. The negligent party, whether protected by insurance for negligence or not, should be responsible for the consequences of his negligence.

I note the application of a similar rule in several jurisdictions in the context of land-lord and tenant. Indeed, some cases lead to the conclusion that the rule for owners and contractors was adapted from the rule for landlords and tenants. In the rental context, the Illinois courts have properly assigned the risk of the tenant's negligence and retreated from the rule that the tenant will be considered a coinsured against whom the insurer for the landlord cannot seek subrogation for the consequences of the tenant's negligence. *Fire Ins. Exchange v. Geekie*, 179 Ill.App.3d 679, 128 Ill.Dec. 616, 534 N.E.2d 1061 (1989).

This analysis demonstrates the wisdom of the long-standing rule in Wyoming that an agreement to indemnify a party from the consequences of his own negligence must articulate that provision in clear and unequivocal language. *Northwinds of Wyo., Inc. v. Phillips Petroleum Co.*, 779 P.2d 753 (Wyo.1989); *Wyoming Johnson, Inc. v. Stag Industries, Inc.*, 662 P.2d 96 (Wyo.1983). I would adopt the result in a contrary line of cases to the effect that when the landlord insures, whether by contract requirement or not, that does not absolve the tenant of the consequences of his negligence. *E.g., Sears, Roebuck & Co. v. Poling*, 248 Iowa 582, 81 N.W.2d 462 (1957); *Winkler v. Appalachian Amusement Co.*, 238 N.C. 589, 79 S.E.2d 185 (1953); *Wichita City Lines, Inc. v. Puckett*, 156 Tex. 456, 295 S.W.2d 894 (1956). This line of authority is in harmony with our general rule. In *U.S. Fidelity & Guaranty Co. v. Farrar's Plumbing & Heating Co.*, 158 Ariz. 354, 762 P.2d 641 (App.1988), and *Steamboat Development Corp. v. Bacjac Industries, Inc.*, 701 P.2d 127 (Colo.App.1985), are found examples of contractual language that probably would satisfy our general rule in Wyoming. That language should not be implied as a matter of law.

I would affirm all aspects of the judgment of the trial court in this case.

GOLDEN, Justice, dissenting.

I respectfully dissent. Relying on a Florida case, the majority holds that the unambiguous contract provision, "Owner to carry fire, tornado and other necessary in-

surance," clearly and unequivocally expresses, beyond any peradventure of doubt, the intention of Teton Shadows, as owner, and Berger, as its plumbing subcontractor, that Berger is absolved from liability for Berger's own negligence. I disagree.

For me, the facts of significance which frame this legal issue of the meaning of this unambiguous contract provision are that Berger is deemed the drafter of the contract provision and Berger's negligence caused the fire. In *Wyoming Johnson, Inc. v. Stag Industries, Inc.*, 662 P.2d 96, 99 (Wyo.1983), this court listed several principles of contract interpretation which I would apply here to resolve the legal issue presented. Courts look with disfavor on contracts exculpating a party from the consequences of his own acts. *Id.* Thus, we look with disfavor on Berger's contract provision. We construe an agreement for indemnity strictly against the indemnitee, particularly if the indemnitee drafted the agreement. *Id.* Berger's contract provision strikes me as being in the nature of an indemnity provision; therefore, I construe it strictly against Berger. Since Berger

intended to throw the loss upon Teton Shadows for the consequences of Berger's own fault, it was incumbent upon Berger to express that purpose beyond any peradventure of doubt. *Id.* In my judgment, Berger's contract provision fails to express that purpose since it is silent about the matter. Berger's contract provision fails the test identified in *Wyoming Johnson:* that provision does not specifically focus attention on the fact that by the provision Teton Shadows was assuming liability for Berger's own negligence. *Id. See also, Northwinds of Wyoming, Inc. v. Phillips Petroleum Company*, 779 P.2d 753 (Wyo. 1989); and *Cities Service Co. v. Northern Production Co., Inc.*, 705 P.2d 321 (Wyo. 1985).

I would affirm the trial court's judgment in favor of Teton Shadows.