2011 WY 24

**UNION PACIFIC RAILROAD COMPANY, Appellant (Plaintiff),**

v.

**CABALLO COAL COMPANY, Appellee (Defendant).**

**Caballo Coal Company, Appellant (Defendant),**

v.

**Union Pacific Railroad Company, Appellee (Plaintiff).**

Nos. S–10–0112, S–10–0113.

Supreme Court of Wyoming.

Feb. 14, 2011.

Representing Union Pacific Railroad Co.: Howard P. Olsen, Jr. and Steven W. Olsen of Simmons Olsen Law Firm, P.C., Scottsbluff, Nebraska. Argument by Mr. Steven W. Olsen.

Representing Caballo Coal Co.: Richard A. Mincer and Billie LM Addleman of Hirst Applegate, LLP, Cheyenne, Wyoming. Argument by Mr. Addleman.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

KITE, Chief Justice.

[¶1] Union Pacific Railroad Company (UP) appeals from the district court's order granting summary judgment in favor of Caballo Coal Company (CCC) on UP's claim that it was entitled to be indemnified for payments it made to one of its employees who was injured on CCC property. In a cross appeal, CCC claims the district court erred by granting summary judgment in favor of UP on CCC's counterclaim for attorney fees.

[¶2] We conclude the district court properly granted summary judgment to CCC because UP did not make any showing that CCC's negligence caused its employee's injury. However, the district court erred by granting summary judgment in favor of UP on CCC's claim for attorney fees because no motion had been filed and CCC was not given notice or an opportunity to be heard on the matter.

[¶3] Affirmed in part and reversed and remanded in part.

## ISSUES

[¶ 4]   We restate the issues presented by UP in Case No. S–10–0112 as follows:

1.   Whether the court erred in granting Caballo's motion for summary judgment on the ground that Caballo had no duty to UP's employee.

2.   Whether the district court should have granted UP's motion for partial summary judgment on the reasonableness of its settlement with Mr. Riecke.

The issue presented by CCC in Case No. S–10–0013, as restated, is:

1.   Whether the district court erred by granting summary judgment in favor of UP on Caballo's claim for attorney fees when UP had not filed a summary judgment motion and Caballo had no opportunity to be heard on the matter.

## FACTS

[¶ 5]   On November 22, 2004, UP locomotive engineer, Roy Riecke, fell while inspecting the locomotive on the train he was operating from a CCC coal mine near Gillette, Wyoming to Bill, Wyoming.   Mr. Riecke stated that he lost his footing on a thick layer of coal dust covering the ballast and fell backwards.   He injured his right knee and lower back.

[¶ 6]   Mr. Riecke filed suit against UP in district court in Nebraska, claiming a right to compensation under the Federal Employers Liability Act. He claimed damages for his pain and suffering, loss of enjoyment of life, lost earnings and other compensatory and consequential damages.   UP notified CCC of the suit and tendered the defense, claiming CCC was obligated to indemnify it pursuant to an agreement between the parties.   The agreement, dated December 10, 2001, supplemented earlier agreements between the parties and their predecessors and stated in pertinent part:

Section 4.   *LIABILITY: INDEMNIFICATION*

CCC hereby agrees to indemnify and hold harmless UP from any and all loss, damage, injury or death arising from the operation of UP delivered trains over the Industry Tracks as provided in this Agreement, to the extent that they result from any negligence or wrongful act or omission of CCC's officers, employees or agents.   UP hereby agrees to indemnify and hold harmless CCC from any and all loss, damage, injury or death arising from the operation of UP delivered trains over the Industry Tracks as provided in this Agreement, to the extent that they result from any negligence or wrongful act or omission of UP's officers, employees or agents.

[¶ 7]   CCC denied UP's request to take over the defense of Mr. Riecke's suit and indemnify UP for its costs.   UP settled with Mr. Riecke for $400,000 on November 9, 2007.   UP then filed a complaint against CCC seeking indemnification for the amount it paid to settle Mr. Riecke's suit and its attorney fees and costs.   CCC generally denied liability under the agreement and counterclaimed under the indemnity provision quoted above for its costs and attorney fees associated with defending the pending suit. UP did not file a timely response to CCC's counterclaim and the district court clerk entered a default against UP. UP subsequently requested that the entry of default be set aside, and the district court granted its request.   UP then answered and denied CCC's counterclaim.

[¶ 8]   CCC filed a motion for summary judgment on UP's indemnification claim, arguing that, in order to establish liability under the indemnification provision, UP was required to demonstrate that CCC was negligent, and CCC did not owe a duty to Mr. Riecke so it could not be found to be negligent.   UP also filed a motion for partial summary judgment, requesting an order that it had made a reasonable, good faith settlement of Mr. Riecke's suit.

[¶ 9]   After a hearing, the district court granted CCC's motion for summary judgment and denied UP's motion as moot.   UP filed a notice of appeal, but we dismissed the appeal because all outstanding issues had not been resolved by the district court's summary judgment order.   In particular there had been no ruling on CCC's counterclaim,

and there was no "indication that the district court intended to direct the entry of a final judgment pursuant to W.R.C.P. 54(b)." [1]

[¶ 10] Back in the district court, the court, apparently acting *sua sponte,* ruled that there were no material issues of fact and judgment as a matter of law should be granted in UP's favor on CCC's counterclaim. The district court stated that the indemnification language of the contract did not allow CCC to recover its attorney fees and costs because those expenses did not arise out of any negligence, wrongful act or omission on the part of UP. UP and CCC both appealed the respective judgments against them. UP's appeal was docketed as No. S–10–0112, and CCC's appeal was docketed as No. S–10–0113.

## STANDARD OF REVIEW

[¶ 11] Summary judgments are governed by W.R.C.P. 56(c):

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

[¶ 12] A district court's summary judgment ruling is reviewed *de novo,* using the same materials and following the same standards as the district court. The facts are considered from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record. *Metz v. Laramie County School Dist. No. 1,* 2007 WY 166, ¶ 17, 173 P.3d 334, 339 (Wyo.2007); *Cook v.*

*Shoshone First Bank,* 2006 WY 13, ¶ 11, 126 P.3d 886, 889 (Wyo.2006).

[¶ 13] In cases involving questions of contract interpretation, the following standard of review applies:

The initial question of whether the contract is capable of being understood in only one way is a question of law for the court. If the court determines that the contract is capable of being understood in only one way, then the language used in the contract expresses and controls the intent of the parties. In such case, the next question, what is that understanding or meaning, is also a question of law. When we review the district court's summary judgment decisions that a contract is capable of being understood in only one way and what that understanding is, we accord no deference to those decisions.

*M & M Auto Outlet v. Hill Inv. Corp.,* 2010 WY 56, ¶ 12, 230 P.3d 1099, 1104 (Wyo.2010), quoting *Examination Mgmt. Servs., Inc. v. Kirschbaum,* 927 P.2d 686, 689 (Wyo.1996) (internal citations omitted).

[¶ 14] Interpretation of procedural rules, including those governing summary judgments, is a question of law we review *de novo.* *Kruckenberg v. Ding Masters, Inc.,* 2008 WY 40, ¶ 14, 180 P.3d 895, 899 (Wyo. 2008).

## DISCUSSION

### 1. Case No. S–10–0012—CCC's Obligation to Indemnify UP

[¶ 15] General contract interpretation principles apply to indemnity agreements. *See, e.g., Jacobs Ranch Coal Co. v. Thunder Basin Coal Co.,* 2008 WY 101, ¶ 24, 191 P.3d 125, 133 (Wyo.2008); *National Union Fire Insurance Co. v. Studer Tractor*

---

1. Rule 54(b) states:

    (b) *Judgment upon multiple claims or involving multiple parties.* When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for

    the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

*and Equip. Co.,* 527 P.2d 820, 828 (Wyo. 1974). Our goal in interpreting contracts is to discern the parties' intent. *Ultra Resources, Inc. v. Hartman,* 2010 WY 36, ¶ 22, 226 P.3d 889, 905 (Wyo.2010); *Carlson v. Flocchini Invs.,* 2005 WY 19, ¶ 15, 106 P.3d 847, 854 (Wyo.2005). The "language of the parties expressed in their contract must be given effect in accordance with the meaning which the language would convey to reasonable persons at the time and place of its use." *Moncrief v. Louisiana Land and Exploration Co.,* 861 P.2d 516, 524 (Wyo.1993). "Where there is an express indemnity provision, its parameters are derived from the specific language of [the] contract." *Diamond Surface, Inc. v. Cleveland,* 963 P.2d 996, 1002 (Wyo.1998).

[¶ 16] The district court determined that CCC did not owe a duty to Mr. Riecke and, therefore, could not be liable under the contract. UP argues, first, that CCC's duty to Mr. Riecke is irrelevant because CCC had a duty to it under the indemnity agreement. It is true that CCC owed a contractual duty to indemnify UP. However, the express terms of the contract control whether indemnification is required or not. *Diamond Surface,* 963 P.2d at 1002.

[¶ 17] Under the terms of their agreement, CCC was obligated to indemnify UP for any loss, damages, etc. arising from the operation of the trains over the tracks **"to the extent that they result from any negligence or wrongful act or omission of CCC's officers, employees or agents."** (Emphasis added). This type of provision, which grounds the right to indemnification upon the indemnitor's negligence, is common. By contrast, there are indemnification agreements where the indemnitor agrees to indemnify the indemnitee for all losses, regardless of fault. Provisions of this sort that exculpate the indemnitee from the consequences of his own negligence are disfavored by the courts and strictly construed. *See, e.g., Wyoming Johnson, Inc. v. Stag Industries, Inc.,* 662 P.2d 96, 99 (Wyo.1983). UP's and CCC's agreement did not include an all-inclusive right to indemnification and allowed for indemnification only when the indemnitor's negligence, wrongful act or omission

resulted in the indemnitee's loss. It is not, therefore, the sort of indemnification provision to which the rule of strict construction applies.

[¶ 18] UP claimed a right to indemnification for the "loss" it suffered as a result of Mr. Riecke's accident. UP's loss arose directly from the action Mr. Riecke brought against UP, specifically the $400,000 it paid to settle his claim and attorney fees and costs. Under the plain language of the indemnification provision, UP had to establish that CCC's negligence, wrongful act or omission resulted in that loss. In that respect, an allegation of CCC's negligence was a condition precedent to its liability under the indemnification agreement.

[¶ 19] The elements of a negligence action are:

1) the defendant was under a duty of care to protect the plaintiff from injury or loss; 2) the defendant breached the duty owed to the plaintiff; 3) the plaintiff suffered actual injury or loss; and 4) the defendant's breach of the duty proximately caused the plaintiff's injury or loss. *Andersen v. Two Dot Ranch, Inc.,* 2002 WY 105, ¶ 11, 49 P.3d 1011, 1014 (Wyo.2002).

*Sorensen v. State Farm Auto. Ins. Co.,* 2010 WY 101, ¶ 8, 234 P.3d 1233, 1236 (Wyo.2010).

The district court ruled that CCC was entitled to summary judgment because it did not owe a duty to Mr. Riecke. CCC argued that, although it owned the premises and UP was transporting coal from CCC's mine, it did not owe a duty to Mr. Riecke because he was employed by UP and CCC did not maintain any control over him or the safety standards employed by UP or its employees. CCC cited *Hittel v. WOTCO, Inc.,* 996 P.2d 673, 678–79 (Wyo.2000) and *Franks v. Indep. Prod. Co.,* 2004 WY 97, ¶ 10, 96 P.3d 484, 490 (Wyo.2004), which state that an owner of a premises owes a duty to the employee of an independent contractor only if the owner exercises pervasive control over the independent contractor's work or assumes affirmative safety duties.

[¶ 21] In response to CCC's requests for admission, UP admitted that it trained Mr. Riecke on his duties as a locomotive engineer

and applicable safety standards; it supervised its employees; CCC did not control the work of UP employees, in general, or Mr. Riecke, in particular; and CCC "did not control the work of Mr. Riecke on November 22, 2004," the date of his accident. The safety manager at the CCC mine averred that he oversees the training of CCC mine employees and the safety training of certain independent contractors at the mine; however, UP employees are exempt from the safety training requirements. On this record, it is clear that CCC did not exercise control over UP or Mr. Riecke's work and did not assume any affirmative safety duties for his work. Thus, CCC did not owe a duty to ensure Mr. Riecke's safety, even though he was on CCC property.

[¶ 22] For the first time, UP argues on appeal that CCC owed a duty to Mr. Riecke because he was a business invitee.[2] There are several reasons to reject UP's argument. First, we typically do not address arguments that were not raised in, or argued to, the district court unless they are fundamental or jurisdictional in nature. *See, e.g., Boyle v. Boyle,* 2006 WY 124, ¶ 18, 143 P.3d 368, 373 (Wyo.2006). UP's argument is neither fundamental nor jurisdictional in nature. In addition, the cases UP cites pertain to situations where customers or patrons were injured on business premises. *See, e.g., Mostert v. CBL & Assocs.,* 741 P.2d 1090 (Wyo.1987); *Bluejacket v. Carney,* 550 P.2d 494 (Wyo.1976); *Honan v. Moss,* 359 P.2d 1002 (Wyo.1961); *Loney v. Laramie Auto Co.,* 36 Wyo. 339, 255 P. 350 (Wyo.1927). Mr. Riecke was not a patron or customer of CCC's and the policies and rules pertaining to business invitees do not apply to this situation. *See, e.g., Jones v. Chevron, U.S.A., Inc.,* 718 P.2d 890, 894–95 (Wyo.1986) (distinguishing between business invitees and employees of independent contractors). Instead, the specific rules pertaining to inde-

pendent contractors and owners apply under the facts of this case.

[¶ 23] While we agree with the district court's analysis of the duty element in this case, we observe that it was unnecessary to undertake that analysis because UP did not allege that CCC's negligence caused Mr. Riecke's injuries. Moreover, Mr. Riecke never asserted that CCC was at fault in his accident. *Wyoming Johnson* is instructive in this regard. Wyoming Johnson was the general contractor on a construction job; Stag was a subcontractor; and Doyle was Stag's employee. Doyle was injured on the job and brought suit against Wyoming Johnson, alleging Wyoming Johnson was negligent. *Wyoming Johnson,* 662 P.2d at 97. Wyoming Johnson and Stag had entered into an indemnification agreement and Wyoming Johnson tendered the defense of Doyle's claim to Stag under the terms of that agreement. Stag refused the tender and the case between Wyoming Johnson and Doyle settled. Wyoming Johnson then brought an action against Stag, seeking indemnification. *Id.*

[¶ 24] The Wyoming Johnson/Stag indemnification agreement had several provisions. One of them contained language very similar to that at issue in the instant case. It required Stag to indemnify Wyoming Johnson from "any and all claims ... for injuries ... to persons ... on account of any act or omission of [Stag]...." *Id.* at 98. We stated that Wyoming Johnson's claim under that provision of the agreement must fail because the "acts of negligence alleged in the Doyle complaint are acts or omissions of Wyoming Johnson, [or] its foreman, ... but are not acts or omissions of Stag." Thus, there was no claim that Stag was negligent and Wyoming Johnson was not entitled to maintain an action under that provision of the contract.[3]

[¶ 25] As in *Wyoming Johnson,* neither Mr. Riecke in his complaint in the underlying case nor UP in its complaint in this case, alleged that CCC was specifically at fault for

---

2. Wyoming law no longer distinguishes between invitees and licensees. The landowner owes the same duty to either, i.e., to exercise reasonable care under the circumstances. *See, Clarke v. Beckwith,* 858 P.2d 293 (Wyo.1993).

3. The balance of the opinion addresses whether Stag was obligated under the parties' agreement to indemnify Wyoming Johnson for any losses Wyoming Johnson incurred, regardless of who was at fault. As we stated earlier, that type of an all-inclusive indemnification provision was not included in UP's and CCC's agreement.

Mr. Riecke's accident. There is no indication that the $400,000 paid by UP was for anything but its own potential fault. Thus, there is no allegation that the condition precedent, CCC's negligence, wrongful act or omission, was met in this case. The district court correctly granted summary judgment in favor of CCC on UP's indemnification claim. In light of that ruling, UP's motion for summary judgment as to the reasonableness of its settlement, which pertained to the damages element of its indemnification claim, is moot.

### 2. Case No. S–10–0113—UP's Obligation to Indemnify CCC for its Attorney Fees

[¶ 26] CCC claims the district court erred by granting summary judgment for UP on its counterclaim for the attorney fees and costs it incurred in defending this suit. A review of the course of proceedings is helpful in understanding this issue. UP filed its suit seeking indemnification for the expenses it incurred in defending and settling Mr. Riecke's suit. CCC answered and counterclaimed for its attorney fees and costs in defending the instant case. It claimed that it was entitled to recover those expenses under the same indemnification provision at issue in UP's action. In other words, CCC claimed UP must indemnify it pursuant to the following language:

> UP hereby agrees to indemnify and hold harmless CCC from any and all loss, damage, injury or death arising from the operation of UP delivered trains over the Industry Tracks as provided in this Agreement, to the extent that they result from any negligence or wrongful act or omission of UP's officers, employees or agents.

[¶ 27] As we have already explained, CCC filed a motion for summary judgment on UP's indemnity claim and UP filed a motion for summary judgment as to the reasonableness of its settlement. Neither party filed a motion for summary judgment on CCC's counterclaim. After the district court granted CCC's summary judgment motion on UP's claim, UP appealed to this court.

[¶ 28] The district court suspended further proceedings in the case "pending the outcome of the matters under appeal to the Wyoming Supreme Court." After reviewing the file, this Court dismissed the appeal because the counterclaim had not been resolved and we did not locate "any indication that the district court intended to direct the entry of a final judgment pursuant to W.R.C.P. 54(b)."

[¶ 29] Back in the district court, CCC requested a trial setting on its counterclaim, while UP asked the district court to correct the original summary judgment order to state that the judgment was final under W.R.C.P. 54(b) and "there is no just reason for delay" in appealing the ruling. Rather than ruling on any of the pending motions, the district court, apparently acting *sua sponte*, entered summary judgment in favor of UP on CCC's counterclaim for attorney fees. In brief, the district court ruled as a matter of law that the indemnification provision did not apply because CCC's claim for attorney fees and costs in defending this action did not arise out of any "negligence or wrongful act or omission" committed by UP. Both parties then appealed the respective summary judgments against them to this Court.

[¶ 30] CCC claims the district court should not have ruled on its counterclaim because there was no pending summary judgment motion. Summary judgments are governed by W.R.C.P. 56, which states in pertinent part:

> **Rule 56. Summary Judgment**
>
> (a) *For claimant.* A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.
>
> (b) *For defending party.* A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a

summary judgment in the party's favor as to all or any part thereof.

(c) *Motion and proceedings thereon.* Unless the court otherwise orders, the motion and any response and other papers relating thereto shall be served pursuant to Rule 6(c). The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

. . . .

(e) *Form of affidavits; further testimony; defense required.* Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

(f) *When affidavits are unavailable.* Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

[¶ 31] Rule 56 clearly contemplates a motion and full adversary proceedings before a summary judgment is granted. There is no specific provision allowing for a district court to grant a summary judgment *sua sponte.* The teachings of *Kimbley v. Green River,* 642 P.2d 443 (Wyo.1982), are pertinent here, although the discussion was in the context of a *sua sponte* conversion of a Rule 12(b)(6) motion to dismiss to a summary judgment motion. Quoting *Davis v. Howard,* 561 F.2d 565, 571–72 (5th Cir.1977), we stated that "the Rule 56 strictures of notice, hearing and admissibility into evidence are strictly required." *Kimbley,* 642 P.2d at 445. "The concepts of notice, admissibility, and opportunity to be heard are ancient primaries. . . . However correct the conclusion below may be in the end, we cannot allow the shaving of principles for expediency when those precepts assure order and justice." *Id.* at 445–46.

[¶ 32] In a similar vein, we ruled in *Abraham v. Great Western Energy, LLC,* 2004 WY 145, ¶ 19, 101 P.3d 446, 455 (Wyo.2004), that the district court abused its discretion by denying the plaintiffs' motion for a continuance of the summary judgment hearing when discovery was not yet complete. "By scheduling the hearing on the motions for summary judgment before the deadline for discovery had passed and, thus, not allowing the Abrahams adequate time to prepare and file any other pertinent materials prior to that hearing, they were deprived of the protections to due process afforded by the applicable rules of civil procedure." *Id.* at 455. *See, also, Jenkins v. Miller,* 2008 WY 45, ¶ 21, 180 P.3d 925, 932–33 (Wyo.2008), where we adopted a procedure for *sua sponte* dismissal of a claim under Rule 12(b)(6), which requires, among other things, notice of the court's intent to dismiss the claim and an opportunity for both parties to respond. *Lee v. Board of County Comm'rs of the County of Sweetwater,* 644 P.2d 189, 190 (Wyo.1982), stating that a non-moving party must be given an opportunity to present evidence and arguments in opposition to a motion for summary judgment.

[¶ 33] The basic premise of these holdings is to require a full presentation of

the issue to the district court before judgment is rendered.[4] In this case, neither party filed a motion for summary judgment or presented any evidence or argument on the issue of whether CCC's counterclaim for attorney fees was appropriate. While we understand that the district court had previously considered the indemnification provision in the earlier summary judgment proceeding and contract interpretation is often a matter of law for the court, the parties did not have the opportunity to present their arguments as to whether the provision allowed for recovery of attorney fees or to present evidence which may be relevant to interpretation of the provision. Thus, the district court violated the procedures set forth in Rule 56 and deprived CCC of its due process right to notice and an opportunity to be heard when it granted summary judgment on CCC's counterclaim. We, therefore, reverse the summary judgment on the counterclaim and remand for proceedings consistent with this opinion.

[¶ 34] Affirmed in part and reversed and remanded in part.

---

4. The district court can grant summary judgment on an issue to the party who opposes a motion for summary judgment so long as the issue was completely presented to the district court. *See, Young v. Hawks,* 624 P.2d 235, 239 (Wyo.1981).

*See also, Newman v. American Nat'l Bank,* 780 P.2d 336, 341 (Wyo.1989) (holding that court may grant summary judgment to non-moving plaintiff while granting summary judgment to another plaintiff).